The next case today is Damilare Sunoki versus Harvard University et al. Appeal number 201-689. Attorney Stone, please introduce yourself on the record. May it please the court, my name is Susan Stone. I'm one of the co-counsel for Damilare Sunoki along with Kristina Supler. We are here today because we believe the trial court erred in dismissing Mr. Sunoki's complaint, which presented several plausible arguments that Harvard University was in breach of contract. It is important to note that the basic premise of the trial court's argument is flawed. The trial court argued that there was nothing in Harvard's documents which should be stated as two handbook general regulation provisions and at least seven other documents and flowchart that explain and describe what's in the regulations and take different turns and are conflicting. Don't promise a student who is in good standing and completes a degree that he will receive the degree. That is just as wrong as it sounds, which is a phrase that was often coined by Harvard in the initial motions to dismiss. Any student, much less Mr. Sunoki, would have a reasonable belief that if they attend class, pay tuition, are not suspended for reasons of academic or disciplinary purposes, would be able to walk at graduation. And that's exactly what occurred here. Mr. Sunoki didn't just attend graduation. He was the male class orator. He had a key role in graduation. After he had, after graduation day, it was only then that there were charges issued against him. And from there, the policy that was applied to him was fatally vague and failed to provide him with his reasonable expectations. The first area of fatal vagueness is that the Ad Board made the decision to discipline him with a undefined standard of sufficiently persuaded. The reason that Harvard used this standard is, was stated in the briefs as Harvard did not want to view this as a legal proceeding and did not want to use the term preponderance of the evidence. Okay. However, if Harvard is going to make up a term, a term that is so crucial in determining whether is it discipline, Harvard should have at least defined the term in either its handbook or one of the many documents that describe the handbook. The term sufficiently persuaded has no uniform meaning. For example, a way I think of it is, let's say you go into a restaurant and have dinner, and then the waiter or waitress comes up to you and says, would you like some some dessert? One judge on this panel might say, I'm sufficiently full. I don't want dessert. Another judge on this panel would, might say, hmm, I would like a sliver for me to make a decision whether I'm sufficiently full. And finally, the third judge here might say, hmm, I'd like a whole piece of cake until I'm sufficiently full. I use that because that's exactly what happened here. The trial court said that we have no evidence in place that would show whether the tribe ad board acted arbitrary and comprehensively. How could we know? We don't even know what the very standard they use had, was defined as. Second of all, the plethora of arguments that were raised in the complaint show that there was a conflict in the documents. For example, did the, did Harvard have the right to withhold a diploma if there was not a charge before graduation? We would argue that the general, the general regulations are, is the document that should control. After all, the regulations, one, were issued in 2012 and superseded the other documents. And two, it's stated in another form that the handbook, which was approved and voted upon by the Faculty Council, is the controlling document. And in that document, it states that a degree should not be withheld if the student has not been charged. And if, unless the student is in good standing. Harvard points to a different document, a document that basically states that in the city... Counsel, does the handbook purport to incorporate all of these other documents into it? The handbook does not incorporate the other documents, Your Honor. The other Do the other documents purport to incorporate the handbook? It purports to explain the handbook. It doesn't incorporate the handbook. Thank you for that question. The student information form states that a student cannot receive a degree before a case is resolved or before a status is, his status is restored to good standing. And ordinarily may not participate in commencement or related activities. It was reasonable for Domilare to assume that he was in good standing and that because he was allowed to participate in commencement, that he would receive his diploma. Also, I would like to wrap up my argument on breach of contract to this panel. It was also reasonable for him to assume that he would know the identities of the witnesses, that he would have an advocate since he was not allowed to attend the hearings against him or any of the witness interviews, and that there would be some confidentiality between himself and his board rep, and that there would be some semblance to the term ordinarily that a case should be timely filed and resolved within a reasonable amount of time. None of that was done, and I would like my co-counsel to discuss the argument of basic fairness. Let me ask you one one one question because you mentioned the issue in your brief also, your briefs, as to the commencement. Is that something that makes your case, you know, more distinguishable or distinguishes it from most of the Massachusetts Supreme Court or First Circuit cases applying the Massachusetts Supreme Court doctrines as to these, you know, these similar issues where a student is discharged from a university. Would that be very different? You have the commencement. Would that, you know, be your argument under Massachusetts law, or at least for purposes of 12b-6? You've argued a plausible claim. I think it's crucial from what you're saying that that that commencement issue is very important. Before you answer that, because I was trying to figure out if the student being allowed to participate in the graduation ceremony is perhaps adding insult to injury, or are you saying, as Judge Helphy was questioning, does it have some particular legal significance? I believe that it does, Your Honor, and I will explain why I think it does in several ways. Under Harvard's policy, they had many mechanisms that would have prevented him from attending commencement. One, they could have placed him on an involuntary leave of absence. That would have placed him as a student not in good standing. Two, they could have sui sponte issued charges on their own, which also would have not allowed him to attend graduation. Three, they could have started, they could have initiated a complaint as early or as late as May 16th, and within the policy, they could have had the entire investigation completed before graduation, and under that scenario, he would not have been able to obtain, attend graduation, much less be the commencement speaker. When we look at other cases in Massachusetts, both state cases and federal cases, you see students are usually suspended from school. They can't attend graduation. They can't even attend class. The fact that they allowed him to attend graduation led him to believe, since there was no case initiated against him, that he would receive his degree. There is no case out there under any scenario where a student was allowed to stay in good standing, attend graduation, and then be subject to a perpetual jurisdiction, even a charge that occurred post-graduation. So, their response to that, I mean, their response to that is that he attended graduation, but he was not given his diploma. So, he knew that he was not doing anything except engaging in an exercise. There was the assumption that he would still graduate. Because he was allowed to participate. By the reading of the policy, which should be construed against the drafter, he had the assumption that he would graduate. When you listen to his speech on YouTube, he was lauded as the class leader. The only assumption I can make sense of why they didn't charge him beforehand or place him on leave when they had those mechanisms is because at that point, he was still a good student in good standing and they wanted him to be class commencement speaker. Judge Helpe? Yes, one final question. Are you aware of any Massachusetts jurisprudence, state or federal, that involves somebody who's actually graduated and then after the graduation, charges are brought and then his degree is, you know, rescinded for such similar conduct. Are you aware of any such jurisprudence? Your Honor, I am not aware of any case. And if you think about it and you look at the Harvard's handbook, the handbook designed by its own words is to be pedagogical in nature, bless you. The handbook is designed by its own definition as a teaching mechanism, not a disciplinary mechanism. It would make no sense for a college to discipline once a student leaves its halls and its classrooms. Is there anything in the handbook that says a degree once conferred can be rescinded? There is nothing in the handbook that states that a degree can be rescinded once it's conferred. And that silence should not be construed against Mr. Sanoiki. All right, we'll hear from Ms. Zuckler. Good morning, Your Honors. Christina Zuckler on behalf of Appellant Don Larsen-Sanoiki. In addition to the arguments related to the breach of contract, just briefly, Your Honors, I submit that Harvard's obligation to provide basic fairness is separate from, and indeed, in addition to, its contractual obligation to follow the procedures set forth in the handbook. And in the case at Bar, I respectfully submit that the trial court's analysis constitutes reversible error because the trial court utterly disregarded the precedence from this court in the Boston College 1 case, what we refer to as BC 1. That case, which in fact involved the same trial court as the case at Bar, was a case in which the First Circuit reversed, in part, summary judgment on breach of contract and basic fairness claims and held that the violation of the students reasonable expectations, even when the expectation was not expressly outlined in the handbook, can also constitute a violation of basic fairness. Here, in the present matter, the trial court, in issuing its order, seemingly disregarded controlling precedence from this circuit. I believe we're at time, Your Honors. So, if you need a couple of extra minutes, you should feel free to take them, Ms. Zuckler. I apologize, Judge Howard, you're speaking and I cannot hear you. Can you hear me, Counselor? Ms. Zuckler just cut off her mic. Yes. Now I can hear you, Judge. And can you hear me? Yes, Judge Howard. Thank you. And do you need a couple of extra minutes to fill out your argument? Thank you for the court's indulgence. I think it would be helpful to briefly address this issue of what constitutes basic fairness because there is not, in fact, a certain definition. Case law makes clear that it is an uncertain, indeed, elastic concept. And when analyzing basic fairness, there's no one-size-fits-all approach. You look at the totality of the circumstances. What's at stake? What's the relative bargaining power of the parties? As well as looking at this issue of arbitrary and capricious behavior. An institution, of course, cannot act in a way that is arbitrary and capricious. And I respectfully submit that, indeed, what is, in fact, more arbitrary than a decision based on an undefined standard of sufficiently persuaded. Here, the briefing outlines, there are several ways, six in particular, expressly articulated, as to how Harvard was required to provide basic fairness to Mr. Sunoiki. Again, number one, I think a most significant issue is the fact that the policy was operating under the sufficiently persuaded standard, which is an indefinite, undefined, contractual term. Persuaded, Harvard would argue, is preponderance of the evidence. However, preponderance of the evidence is the degree to which a party is persuaded. Also, could you just just pin down, your sister said that Harvard expressly disclaimed that sufficiently persuaded meant, at one point, preponderance of the evidence. Is that correct? Yes, Your Honor. As pled in the complaints, there is reference to articles by the Harvard Crimson in which the school distanced itself from the preponderance of the evidence standard, stating that these proceedings are pedagogical. They are not, in fact, legal proceedings. Thus, there's no reason to use legalese. However, now in the Court of Appeals, we find ourselves in a situation in which Harvard has a newfound interest in this standard, preponderance of the evidence, in an effort to define an otherwise ambiguous term that renders the contract void. In addition to the issues relating to ambiguity in the contract, I'd submit to the court that Harvard's decision not to provide witness identities to the respondent violated an expectation of basic fairness. How can one defend oneself without knowing who's saying what? I'm sorry, just to pin that down. Your client was provided witness information as to the particular claimants, right? The people who were making the allegations, the complainants. Yes, Your Honor. The complainants, in the three separate cases, their names were provided. However, witnesses identified in the case, I believe there was in excess of 25 witnesses or so total, were never identified by name. They were simply assigned a number. In the briefing, we explain that through a process of deductive reasoning, we can figure out that, in fact, one complainant was a witness against Mr. Sunoiki in another complainant's case. Aside from that analysis, Mr. Sunoiki had no ability whatsoever to know what evidence was presented by whom against him. Not to mention the fact that the conduct in question regarding some claims was almost two years old at the time it was being analyzed by the ad board for the standard of sufficiently persuaded that a policy violation occurred. And in so doing, moving through the process, I'd also remind the courts that Mr. Sunoiki was not allowed to advocate for himself present for any of these proceedings. He had to rely on his board representative, who, in fact, per Harvard's policy, was expressly not his advocate. And so this case is arguably far more severe in terms of a violation of basic fairness than the Boston College One case, because in Boston College, the First Circuit ruled that it was reasonable for a student to have an expectation that a disciplinary proceeding would go forward without interference by an outside administrator in panel deliberations. Here, in Mr. Sunoiki's case, the matter was presented to a hearing board. He wasn't permitted to be present. He doesn't know what was said. He doesn't know whether his perspective was clearly presented. And he had to, in fact, rely on his board representative, who could perhaps negatively influence the outcome of the proceeding, or not clearly articulate Mr. Sunoiki's perspective. And he had no way of knowing because he wasn't even allowed to be present. Well, was it that he was not allowed to be present, or he was not able to be present because he was doing something else, like trying to work? Your Honor, that's an excellent question. The policy expressly prohibited students from being present. The students had to rely solely on a board representative, who was not allowed to advocate on the student's behalf. Lastly, or in addition to that, I would say that Mr. Sunoiki was denied basic fairness, and that the proceedings were not free from bias. Here, this is a situation where the Secretary of the Ad Board, who voted on Mr. Sunoiki's case, was a gentleman who, very early on in the process, was responsible for, in fact, soliciting complaints from other students. So a Harvard administrator, at the direction of Dean Ellison, contacted other female students to come forward and formally file complaints against Mr. Sunoiki. And after so doing, this gentleman voted, by the sufficiently persuaded standard, on whether there was a policy violation, and then subsequent to that, with respect to an appellate process, if Mr. Sunoiki had questions, he was directed to contact that very same administrator, who solicited complaints, and then voted to advise him regarding the appellate process. In our briefing with respect to this issue of bias, we also discuss and examine the fact that this Ad Board that governed Mr. Sunoiki's case had 30 members. Of those 30 members, there was not a single black male on the panel to examine the case. And in the complaints, we highlight ample evidence regarding implicit bias, and it's worth noting that subsequent to this case, in fact, Harvard's policy included training for implicit bias, and now Harvard's become a leader in this field. We thank you, Your Honor, for your time. All right, Ms. Supler and Ms. Stone, we will hear from Mr. Metlitsky now. Before you begin, Mr. Metlitsky, please, Attorney Stone and Attorney Supler, please mute your device, including your camera. Attorney Stone, we can thank you. Please go ahead and introduce yourself on the record. Thank you, Mr. Metlitsky. Thank you, Your Honor. May it please the court, Anton Metlitsky for Harvard. I think we can just jump right into the contract claim, which is what Ms. Stone started with, and in particular the jurisdictional argument, because I want to clear up some facts that's put in the complaint and with respect to Harvard's documents. So the student information form says expressly that a student cannot receive a degree before a pending disciplinary case is resolved, and a disciplinary case is defined to begin with an allegation of student misconduct. Is that incorporated into the handbook? Yes, so the handbook, this is page 75 of the appendix, the general regulations on which my colleagues rely. The very first page of that regulation, of those regulations say the following is a brief introduction to these boards, the Ad Board and another board. For a more detailed description, students may consult with their resident dean or visit the website of the Administrative Board at www.adboard.fas.harvard.edu, and the student information form is one of the forms that you will find at that website, and the student information form, unlike the general regulations, goes through from beginning to end what the disciplinary process looks like. So the, and I don't think there's any dispute that the express language of the student information form would preclude the plaintiff's claim here because the two of the complaints were filed before commencement. Right, so that language just expressly and unambiguously precludes their claim. What they say is the general regulations have other language that they say conflicts because the general regulations say that Harvard will not grant a degree if there's a charge, but there's no conflict. All that means is Harvard is precluded from granting a degree if there's a charge pending. That language doesn't say that Harvard will grant a degree if there's no charge pending, and in fact, if you look at the controlling document, the student information form, the language expressly precludes Harvard from doing that, and I think one way to look at the question is just imagine the student information form wasn't there, right? I mean, we would have a harder case, but we would be making exactly the same argument because we would say that language in a handbook that says Harvard won't grant a degree so long as a charge pending does not preclude, does not require from Harvard to grant a degree in all other circumstance, including when there was, you know, an allegation of serious sexual misconduct before graduation. Now the plaintiff says... What is the point of allowing him to participate in the graduation ceremony? Right, so that's what I was going to get to next. They say that what Harvard should have done is issue a formal charge immediately and preclude him from walking and giving a class day speech based on an allegation. But of course, the reason that the rules are set up the way they are is because you don't want to do anything based just on an allegation. Harvard's procedural documents set up a system where once a complaint is filed, the allegation is investigated, and then when the investigated investigation turns up enough that the ad board decides that a formal charge should issue, then a formal charge would issue. They think a formal charge should issue immediately based on just an allegation, that he should be precluded from walking in graduation and giving a speech based just on an allegation, and that no investigation is warranted at the outset. It seems to me, I mean, here the ad board concluded that the allegations were true, but imagine that the ad board had concluded that the allegations were false. Then he would have been precluded from walking at his graduation, from giving his class day speech based just on allegations that turned out not to pan out. That kind of system, it seems to me, makes no sense. And if you're gonna base a contract claim on that kind of system, that doesn't make much sense. You would at least expect extremely clear language requiring Harvard to follow that kind of process. And here what you have is the opposite. You have extremely clear language in the student information form, absolutely precluding the plaintiff's argument, because it says that once a disciplinary case is filed, meaning a complaint is filed, Harvard won't grant a degree. So I think that language, and more generally the sort of unreasonableness of the position that the plaintiff thinks Harvard should have taken, resolves that what they call jurisdictional claim as a matter of contract. Now, I would move on unless the the court has questions about that. So the next point is the sufficiently persuaded standard. So the argument that they're making, as I understand it, is that the sufficiently persuaded standard, which is the reason Harvard uses those words, as my colleague said, is because they wanted to avoid sort of adjudicatory language. But their argument, to win, the court has to believe that the sufficiently persuaded standard could reasonably be understood to mean something less than a preponderance of the evidence. Because if it's more than a preponderance, it obviously couldn't have hurt the plaintiff. And that seems to me to be a totally unreasonable reading of that standard, because the question is sufficiently persuaded of what? Well, at page 92 of the appendix, the board can take disciplinary action if it's sufficiently persuaded that the student has proof. When the question is whether something has or hasn't happened, it's less than a preponderance, because then you would be telling a fact finder, well, even if you think something is likely to be false, you have to find that it's true anyway. No reasonable fact finder or any other reasonable person would read that kind of language that way. And that's other language in these documents confirms the point. For example, at 79 of the appendix, it says that discipline is appropriate, quote, if the board determines that wrongdoing occurred. Not that wrongdoing may have occurred, that there's, you know, probable cause that wrongdoing occurred, but that it actually occurred. So there's no way you could have a standard of proof that's less than a preponderance to figure out if something occurred. Same thing on 95. It says that discipline is appropriate when the student has violated the rules or standards of conduct, and that no discipline is appropriate when, quote, the accusation could not be substantiated. Again, totally inconsistent with the standard of proof that's less than a preponderance, whatever that would mean. So I think that's an easy way to resolve that issue. And then there on the contrary... Let me ask you, if I can interrupt you, let me ask you, here the issue, and the Plaintiffs' Council have argued this, it's an issue of timing. And my question is, is there anything in the manuals, you know, the H.A.R.V.E.'s policies, that lays the limit when it can take action? Is there anything at all in those documents? There's nothing in the documents that limits Harvard, and I think just, you know, you can think of examples where there couldn't possibly be. I mean, let's say June after graduation, you figure out that a student cheated on every single exam they ever took at Harvard. The idea that Harvard couldn't take back a degree seems, to me, not to make sense. But here you don't have to resolve that kind of question about whether Harvard could do something after a degree was granted, because here the complaints were filed before the degrees were granted, and the documents speak expressly to that circumstance. Again, this is page 93 of the appendix. A student cannot receive a degree before a pending disciplinary case is resolved. And then 87, a disciplinary case always begins with an allegation of student misconduct in the form of a complaint, and that allegation happened before graduation. So, again, we're not talking about what a student would reasonably infer from silence, we're talking about what a student would reasonably infer from express language, and the express language just squarely precludes the argument here. Now, let me ask you hypothetically, what would have been, would the case be the same if no charges had been filed, no complaint, he had gone to the commencement ceremony, he had paraded there with all the other students, and then before he actually gets his diploma, and you know, the complaint is made, would that still be the same result? Before he gets his diploma, then yeah, it would be the same result, because it would just be covered by that language that I just read. I mean, I think the harder question is, what if this all comes to light, you know, a month or two months or three months later, and then I think it's within Harvard's discretion. Of course, Harvard does not have to grant degrees to people that, you know, violate rules of the sort that I just mentioned, you know, obviously, if somebody is found to have cheated their way through Harvard, I'm sure it can rescind its degree, it's got discretion to do that, and I would think that it would have the same kind of discretion when it comes to, you know, serious sexual assaults, but you know, that's a completely different case, because I think there, you know, we wouldn't be dealing with the kind of express language that we're dealing with here, and again, I just want to make clear that their whole argument is based on this, the general regulations that say that Harvard won't grant a degree after, while a charge is pending, and they're taking from a negative implication that Harvard has to grant before a charge is pending, but even if there were no other language, that would be, that implication would be incorrect, and there is other language in the student information form which expressly precludes Harvard from granting a degree once a complaint has been filed, and so that language controls here. I think I've gone through, if that answers your question, yes, I think I've gone through sufficiently persuaded, there were a few other points that council ticked off on the contract point. Before you move from sufficiently persuaded, how is the investigative board, how is that communicated to the board? It's in the documents that govern the board, so the language that I read you is on appendix 92, which is part of the student information form, which is a board document, all these are board documents, and it says that the board can take action if it's sufficiently persuaded that the student has violated the rules of the faculty, so those documents govern the board just as they make students aware of what the procedures are going to be, right? So I think if your honors have any more questions about sufficiently persuaded, I think that goes to the contract and the basic fairness claim, the way the plaintiff is framing them. Also going to both of those claims is the identity of the witness, and as Judge Thompson, you made clear, there's no question that he knew the identities of the actual complainants, and I think it's very important to look at what he actually pleaded and what he didn't plead as to this point, because what he pleaded was that the subcommittee didn't tell him the names. This is on 315 of his complaint, 43 of the appendix. The subcommittee prepares the disciplinary case report, and he says that when the disciplinary case report was given to him, the names of the witnesses were blacked out. That's true, that's required by FERPA, it's in the supplemental appendix, and you can look at it. He doesn't say that, you know, he asked his board representative, for example, what the names of the witnesses are, and the board representative says, I can't tell you. He doesn't say that he didn't know the names of the witnesses. He specifically alleges that he at least knew some of them, but nowhere in his complaint does he allege he didn't know any of them, nor did he say when he was responding to the witnesses' statements or in his complaint in this case that there was any problem, that he had any problem responding because he didn't know the names of the witnesses, and the only reason that you would not make that kind of allegation is either that you knew the names of the witnesses or it didn't matter, because remember, the standard in Massachusetts is, at least part of the standard is, you have to be made aware of the allegations against you, and you have to be able to respond, and he was able to respond to the allegations here three or four times, including to the witness statements, and of course you need to know who the complainants are because otherwise you don't know what the allegations against you are, but even if he were right that he was, you know, somehow wasn't able to know who the witnesses were, that doesn't mean he wasn't able to respond, and he never said he wasn't able to respond. The witnesses corroborate and provide additional evidence. It's hard to understand how he could respond to witness statements if the names of the witness... I mean, what's the point of witness statements not being provided routinely? Well, they are provided. The witness statements are all provided. It's just the witness names in the actual document are blacked out, and he responded. Not only could he have responded, but he did respond to the witness statements. His responses are in the supplemental offenders, and again, what he alleges is that the document, the subcommittee, when it gave him this document, you know, blacked out the names, didn't tell him the names. He does not allege that he asked, for example, his board representative or anybody else, and they wouldn't tell him the names. There's no allegation like that in the complaint, and that's either... I'm sorry, would you have told him? I think so. You know, I'm bound by the record, but... In other words, is there a policy that says that he has a right to know the names of the witnesses? There is no policy that speaks about this at all, which is another reason, as Judge Hathaway held, there wouldn't have been any reasonable expectation of that, and there's no basic fairness right to it, because there's not even a basic fairness right to a hearing at all, right? But that doesn't mean that somebody wouldn't have given it to him, and I think the more important point is he doesn't allege that. He says that the subcommittee didn't give him the names of the witnesses. He also doesn't allege that he didn't know who they were, or that even if he didn't know who they were, that he had some problem in responding to their allegations, which is, at the end of the day, what matters, right? That you're able to respond. So, I think that's our basic answer on the identity of the witnesses. Let me ask you one question, Ms. Supler, for Mr. Sunoiki. One of the arguments she made, and this is obviously in the priest's pleading, is that the person from Harvard who asked individuals to file complaints or, you know, to move on forward, is somebody who later is taken, and that to me reminds me of cases where, you know, the prosecutor can't be the judge, and that's an issue. Wouldn't that go to basic fairness, and perhaps there's a material issue of fact, an issue of fact that goes beyond the 12B6 standard that needs to undergo discovery? No, Your Honor, for a few reasons. First of all, I would encourage you to get out of the That's true. That's not the kind of model that this university uses, and Massachusetts has made clear that universities can use whatever kind of model that they think comports with their pedagogical mission, and here what happened is, an associate dean who's the secretary of the ad board, this is the allegation, right? The associate dean who's the secretary of the ad board found out that there was a student who says that she was sexually assaulted by the plaintiff, and just encouraged her to file a complaint. He didn't, and when you, and obviously the secretary of the ad board would know better than anybody else, that when you find a file a complaint, what happens is a subcommittee of the ad board is constituted, an outside fact finder is hired, they go through a lengthy investigation, and then they present facts to the ad board. There's a hearing, and the ad board votes. The fact that a dean encouraged a student to file a complaint so that that investigatory process could commence doesn't say anything about the dean's bias about how he would vote later, and of course there's a presumption of regularity to any kind of administrative proceedings, but certainly private university proceedings, so if you're going to get past the motion to dismiss, you have to allege something that would be out of the ordinary, right? So in the in the Boston College case, the first... I'm sorry, isn't this the dean though who heard from the first complainant a year prior, and then encouraged the second complainant to be in touch, or the third complainant to be in touch with the first, who didn't want to press? I don't think so, your honor. I could be wrong, but I think that that allegation is about Sarah Rankin, who is the director of Harvard's Office of Sexual Prevention and Response, but I'll tell you, even assuming you're right, again, the fact that a dean wants plaintiffs who say they've been sexually assaulted to file a complaint with the board that adjudicates sexual assaults doesn't tell you anything. There's no bias there, because all the dean is saying is, let's institute the process so that we can have fact-finding. What happened in BC1 was, at the point that the board was adjudicating, actually deciding the case, an administrator interfered and pressured members of the board to vote a particular way. There's no kind of allegation like that at all in this case, right? And that's the kind of thing you would need to allege, you know, that somebody that in the due process context makes clear that administrators can be dual-hatted. And again, the presumption of regularity, I think if it suggests anything, suggests that you have to allege something that, you know, would plausibly suggest bias rather than just normal conduct. A few other points that my colleagues raised that I'd like to respond to, one is... I think maybe the last two points are about the board representative. One is the contract claim about whether the board representative would act as an advocate. I think that one is just resolved by the language in the student information form that says the board won't be an advocate, as well as paragraph 342 of their own complaint, which says that the board representative was specifically barred under Harvard's policies from serving as an advocate. And then the first problem is there's no allegation, even if there was a promise of confidentiality, there's no allegation that any confidences were breached. So you can't have a breach of contract claim if you don't allege that, first of all, I was promised that the board rep would keep confidences. And second of all, the board rep actually violated confidences. There's no such allegation. In any event, there's no promise of confidentiality. After all, the board rep is a member of the board. And what they rely on is language that says that you should be honest and forthcoming with your board representative. But there's other language in the documents, for example, 94 to 95 of the appendix that also say you should be honest and forthcoming with every member of the board. They can't possibly think that there's a promise of confidentiality for every member of the board. So I think there's, as Judge Casper held, there's no promise there, but also no allegation of breach, which is enough to resolve. All right. We are going to now hear from Ms. Stone again. Everything that opposing counsel stated points to our need for discovery. Our need to look at it would be argued that terms should not conflict. Just there are internal contradictions even within the very student information form discussed by Harvard. For example, this opposing counsel argues that a student should not graduate if there is a case, and then states that a disciplinary case, and it's in the form, always begins with an allegation in the form of a complaint. So the issue is, he argues, ergo, a case is a complaint because there was a complaint. That makes no sense. That would be like saying all cakes begin with eggs and flour, therefore eggs and flour combined always make a cake. That just doesn't make sense. There's another form, though, and it's a flow chart that makes it even more confusing. It's Exhibit 5 that says, what is a charge? A charge is the decision by the board to pursue a case against the respondent. So if I'm a student and I'm looking at all these documents, I would have absolutely some confusion as to when the process begins, when they can withhold a degree. Is it a charge? Is it a case? Is it a complaint? If there's any doubt and any confusion, then the trial court must be reversed. Likewise, in the very student information form that is relied upon by Harvard, there is some interesting language. It states on page five of the student information form, if the allegations involve conduct that is of a particularly serious nature. I'm sorry, Judge Thompson, I didn't see, did you have a question? I've almost forgotten it at this point. I guess the argument that you were making about the conflicting terminology, are you saying that that goes to the student's reasonable expectation? I mean, is that why you're saying that? Or does that go to your breach of contract? Both, Your Honor. Under Massachusetts law, there is a breach of contract if a term is either fatally ambiguous or whether the reasonable expectations are not met. So I would argue that even the internal inherent contradictions would make this so conflicting that it needs to be resolved by a jury or should be considered void by this court. Also, if there's any doubt as to which documents control, only one set of documents are called regulations and are voted for and Harvard never discusses the fact that the regulations were in 2012 superseded the student information form. Finally, I just want to go back to the paragraph that I read. It said, if the allegations involve conduct that is of particularly serious nature or if similar allegations have been brought by others about you, the college may decide to move forward with a charge in the interest of community safety. That language was there in that very document that Harvard states trumps the language in the regulations. There should have been a charge and there was the mechanism, not in one document, but in almost every document cited. There was no charge. I'm sorry, let me just, I mean, were we to reverse and the matter proceeded? I mean, at trial, would you be arguing breach of contract and would you be arguing also the merits of the findings? In other words, that he committed these sexual allegations? We don't believe we need to argue the merits of the case because we believe that the process was so flawed. They did not have jurisdiction against him to try these cases and indeed, I should mention that there was no complaint or charge concerning the three complainant and Harvard never addresses this simply because, and neither did the trial court, because there is no good answer as to Betty. There is absolutely no answer as to why Harvard could discipline Mr. Sanoky in a situation where there was neither a complaint or a charge prior to graduation as to that person. And since the disciplinary policy states that withdrawal or dismissal is recommended when there's more than one finding, it was essential that that portion of that complainant not be lumped together with the other two cases. They were completely infected by a third case of which there was absolutely no jurisdiction to address this because logically, there is no answer to that one. Thank you, Ms. Stone. Other questions from the court? All right, we will take this case under advisement. I want to thank counsel for their arguments and the time that they have given us and I believe that concludes our arguments for this morning and early afternoon. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may now disconnect from the meeting.